No. 57,063

THE CITY OF OVERLAND PARK, KANSAS, *Appellee*, v.
EVERETT L. MCLAUGHLIN, *Appellant*.

(714 P.2d 939)

Opinion filed February 21, 1986.

*Patricia L. Lear-Johnson*, of Wolf & Longan, of Stanley, argued the cause, and *S. W. Longan, III*, of the same firm, was with her on the brief for appellant.

*Karen Arnold-Burger*, assistant city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: The defendant, Everett L. McLaughlin, was convicted of driving an overweight truck in violation of Overland Park municipal ordinances which incorporate by reference K.S.A. 8-1908 and 8-1909. Specifically, he was convicted of driving a truck weighing in excess of the maximum on the rear axles and in excess of the extreme axle weight. He was originally convicted in the Overland Park municipal court. He appealed to the District Court of Johnson County, where the charges were tried de novo and he was again convicted. The Court of Appeals affirmed. *City of Overland Park v. McLaughlin*, 10 Kan. App. 2d 537, 704 P. 2d 997 (1985). We granted review on November 7, 1985. Defendant challenges the ordinances on constitutional grounds. We affirm the Court of Appeals, and we agree with most of its opinion, but we base our determination of the constitutionality of the ordinances and statutes upon a slightly different rationale than previously expressed.

The facts are fully stated in the opinion of the Court of Appeals and we will not repeat them here. We wish to clarify, however, certain terminology. The defendant was driving a concrete truck. This consists of a straight truck with a single

chassis, having one axle at the front upon which the front single wheels are located and having two rear axles, each equipped with dual wheels. Thus, there were a total of eight wheels at the rear of the truck and two at the front, connected by the frame or chassis. On the rear of the truck was mounted a large cylindrical cement mixer in which the load was carried and which mixed the load while the vehicle was en route from plant to job site. The straight truck here involved is to be distinguished from units described as "truck tractors and dump semitrailers" or "truck trailer combinations." A "truck tractor and dump semitrailer" consists of a truck tractor having a single axle at the front and usually two axles at the rear, but having no bed for carrying loads, and a semitrailer, having no motive power of its own but having a bed in or on which the load may be carried. A dump semitrailer is a semitrailer which is equipped with a hydraulic assembly at the front by which the front of the trailer body may be lifted in order that the load will slide out and be discharged at the rear. A semitrailer has no front wheels for highway use, but the front of the semitrailer extends over and rests upon the rear of a truck tractor when the trailer is being used.

A "truck trailer combination" consists of a straight truck with a bed of its own, which truck is connected to and pulls a trailer which customarily has axles at both the front and rear. It is important to note that plaintiff's vehicle was a straight truck, not a truck tractor and dump semitrailer and not a truck trailer combination.

The Overland Park municipal ordinance under which the defendant was charged incorporated by reference the provisions of K.S.A. 8-1908, which prescribes the gross weight which may be carried upon any one axle of a vehicle, and K.S.A. 8-1909, which in subsection (a)(2) prescribes the maximum weight of a vehicle and its load, the load limit being that shown in a table which is a part of the statute and which maximum gradually increases in proportion to the increase of the distance between the extreme axles of the vehicle. Exceptions to the limits fixed in the table are granted by K.S.A. 8-1909(a)(3), which reads:

"(3) The above table shall not apply to truck tractor and dump semitrailer or truck trailer combination when such are used as a combination unit exclusively for the transportation of sand, salt for highway maintenance operations, gravel, slag stone, limestone, crushed stone, cinders, coal, blacktop, dirt or fill material, when such vehicles are used for transportation to a construction site, highway

maintenance or construction project or other storage facility. As used in this subpart (3), the term 'dump semitrailer' means any semitrailer designed in such a way as to divest itself of the load carried thereon."

Defendant first contends that subparagraph (a)(3) of the statute and ordinance violates his due process and equal protection rights because his concrete truck is not included in the category of vehicles not subject to overall weight limitations, as noted by the Court of Appeals. He divides his argument into three parts:

"First, defendant argues there is no difference between concrete trucks and truck tractors, dump semitrailers or truck-trailer combinations. Defendant states that his truck, like the others, is used in the transportation of construction materials and thus should be treated like the others.

"Defendant's second contention is that by excluding truck tractors, dump semitrailers and truck-trailer combinations, the state is giving a commercial advantage to the asphalt industry. Defendant states that the weight limitations imposed by the statute force him to make more trips to do the same job as trucks carrying asphalt, which can carry heavier loads. Defendant claims his cost is thus increased and the asphalt industry has a competitive edge.

"Finally defendant argues that the legislative purpose of K.S.A. 8-1909 is to promote construction. Defendant contends the concrete industry is as interested in construction as the asphalt and other industries. He contends that if the legislature intended to promote construction, cement trucks should be freed from any weight restrictions just as are other trucks hauling construction materials." 10 Kan. App. 2d at 539-40.

The City contends that the legitimate state interest present in the statute is that of safety. It introduced the testimony of a specialist with the Kansas Department of Transportation in support of that argument. The district court found that the statute was constitutional and not discriminatory "due to its purpose of promoting public safety." The statute does not exempt straight trucks as such. Instead, it exempts truck tractor and dump semi-trailer and truck trailer combinations. Straight trucks, used by themselves, are not granted any exemption regardless of the cargoes they may be carrying. A trailer is a unit without motive power, which is attached to another vehicle by means of a hitch. A trailer does not have the stability of a straight truck, since it does not have the weight of an engine and cab bearing upon a single chassis at the front. Thus, as the witness explained, when the body of a trailer is elevated to discharge the load, there is a danger that under certain circumstances the trailer may tip over. As the Court of Appeals pointed out, the witness testified that for safety purposes it is necessary that dump trailers and dump

semitrailers be allowed to carry heavier loads in order to promote stability and prevent tipping over.

In *State v. Shouse*, 8 Kan. App. 2d 483, 660 P. 2d 970 (1983), the same subsection of K.S.A. 8-1909 was challenged on equal protection grounds. The defendant in that case was hauling logs. It is not clear from the opinion whether his vehicle was a straight truck or a combination involving a trailer or a semitrailer, nor is it clear whether the vehicle discharged its load by dumping. Shouse challenged the constitutionality of the statute on the basis that the statute exempts truck tractor and dump semitrailer or truck trailer combinations when they are transporting certain materials, but not when they are hauling logs. The *Shouse* opinion construes the statute to exempt only those vehicles hauling the designated materials when intended for highway purposes. In other words, under the *Shouse* opinion, a truck tractor and dump semitrailer hauling sand to a highway construction site would be exempt but the same vehicle would not be exempt if it was hauling the same load of sand to any other construction project. We disagree with the rationale expressed in *Shouse*, and find that the statute exempts the designated vehicles when hauling the designated cargo, regardless of destination. It appears to us rational to exempt dump semitrailers and truck trailer combinations when those vehicles are carrying loose fill materials, such as those described in the statute, when lighter loads might cause the trailer or semitrailer to overturn. Solids such as lumber, logs, and steel, and liquids such as water, road oil, and concrete are not included. Those items, however, are perhaps not customarily hauled in dump semitrailers. The Court of Appeals observed in its opinion in this case:

"[A]s the statute possesses a presumption of constitutionality, as the burden of showing invalidity is on defendant, and as it cannot be said the classifications used are 'wholly irrelevant' to *the furtherance of safety*, it appears a legitimate state interest exists. As such, it cannot be said the statute is unconstitutional on equal protection grounds. Therefore, if K.S.A. 8-1909 is not unconstitutional, the Overland Park Municipal Ordinance incorporating the statute likewise does not violate equal protection of the law." (Emphasis supplied.) 10 Kan. App. 2d at 542.

As to defendant's first argument, we disagree with his contention. There *is* a difference between straight trucks, such as the defendant was driving, and truck tractor and dump semitrailer combinations, and truck trailer combinations. For the safety reasons expressed above, the statute appears to further a legitimate state interest, that of safety.

As to his second and third arguments, that the statute gives a commercial advantage to the asphalt industry, and that trucks hauling concrete should be freed from the weight restrictions, we are not persuaded. Defendant's arguments should be made to the legislature, not to the courts. The statute exempts certain types of vehicles: defendant was not driving that type of vehicle. If he had been carrying sand or asphalt, his truck would still not have come under the exemption. We find no legislative intent to give preference to one industry over another.

We find a rational basis for the exceptions contained within the statute, and conclude that neither the Overland Park ordinances nor the statute violate the due process or equal protection clauses of the U. S. Constitution.

All other issues have been appropriately discussed and properly decided by the Court of Appeals and we need not repeat them here.

The judgments of the trial court and the Court of Appeals are affirmed.